BETHANY D. KREUGER, Reg. No. 306368
MEGAN M. WALSH, Reg. No. 394837
GREENE ESPEL PLLP
222 South Ninth Street, Suite 2200
Minneapolis, MN  55402-3362
Telephone:  (612) 373-0830
Facsimile:  (612) 373-0929
bkueger@greeneespel.com
mwalsh@greeneespel.com
Attorneys for Plaintiffs 3M Company and
3M Innovative Properties Company

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M COMPANY and 3M INNOVATIVE PROPERTIES COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ACS INDUSTRIES, INC.,<br><br>Defendant. | C.A. No. _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

For its Complaint against Defendant ACS Industries, Inc. ("Defendant" or "ACS"), Plaintiffs 3M Company and 3M Innovative Properties Company (collectively, "Plaintiffs" or "3M") allege as follows:

### NATURE OF ACTION

1.     This is an action for damages and injunctive relief arising from ACS' misappropriation of 3M's trade secrets, unfair competition, and tortious interference with the contractual relationship between 3M and Charles G. Bents ("Bents"), a former 3M employee.  As set forth below, ACS willfully and intentionally induced Bents to breach his obligations of non-disclosure with respect to confidential and trade secret information pertaining to 3M's non-woven abrasive products, thereby obtaining confidential and trade secret information to ACS' advantage and 3M's great detriment.

### THE PARTIES

2.     Plaintiff 3M Company is a corporation organized under the laws of the State of Delaware,

having its principal place of business at 3M Center, St. Paul, Minnesota 55144.

3. Plaintiff 3M Innovative Properties Company is a corporation organized under the laws of the State of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55144.

4. On information and belief, Defendant ACS Industries, Inc. is a corporation organized under the laws of the State of Rhode Island, with a principal place of business at One New England Way, Lincoln, Rhode Island 02865.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this controversy pursuant to the diversity statute, 28 U.S.C. § 1332(a). Plaintiffs are citizens of Delaware and Minnesota, whereas Defendant is a citizen of Rhode Island. The amount in controversy exceeds $75,000, exclusive of interests and costs.

6. This Court has personal jurisdiction over ACS because ACS intentionally interfered with and induced the breach of a contract that was entered into in Minnesota and that it knew was governed by Minnesota law, and expressly aimed its tortious conduct at the State of Minnesota, including by arranging for Bents' transportation to and from Minnesota and by receiving ill-gotten confidential information that it knew was confidential and proprietary to 3M, a Minnesota-based corporation, and kept confidential in Minnesota, with the knowledge that its acquisition and use of 3M's confidential information would cause effects and injury in Minnesota. Moreover, on information and belief, ACS continuously, systematically, and purposefully conducts business within this District, including by selling in Minnesota non-woven abrasive products that are the subject of this action, that it manufactured using Plaintiff's confidential information as herein alleged. ACS' contacts with Minnesota are substantial enough to reasonably anticipate being hauled into court in Minnesota, such that the exercise of jurisdiction over ACS does not offend traditional notions of fair play and substantial justice, consistent with Due Process.

7. Venue in this judicial district is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to 3M's claims occurred in this District and because ACS is subject to personal jurisdiction with respect to this action, as described above.

**FACTUAL BACKGROUND**

**Bents' Employment with 3M**

8. Bents was employed by 3M from approximately November 11, 1969, until his retirement

on June 30, 2005. At the time he retired, Bents was a Senior Specialist Process Engineer in 3M's Home Care Division ("HCD"). The HCD manufactures and sells non-woven abrasive products, such as 3M's Scotch-Brite™ scouring pad. Within 3M, Bents was considered one of 3M's top two or three experts on the technologies, processes and equipment used to make non-woven abrasive products.

9. Because of his expertise in this area, Bents traveled extensively, while he was employed by 3M, to 3M plants that manufacture non-woven abrasive products, either helping to set up new manufacturing lines or to trouble-shoot problems. He knew virtually everything about 3M's manufacture of those products, having worked with them for over 30 years.

10. The methods used to make non-woven abrasive products are used to make many products for 3M divisions other than HCD, including its Abrasive Systems Division and its Commercial Solutions Division. At different times during his career at 3M, Bents worked in all three of these divisions or their predecessor divisions.

11. Generally, non-woven abrasive products are made as follows by 3M:

   a. 3M starts with loose nylon or polyester fibers that are sent through web forming equipment to produce a web.

   b. The web is then sent through a coating process where binding resin and abrasive mineral are applied. The binding resin and abrasive mineral provide the finished product with strength and cut.

   c. The coated web then passes through an oven where the binding resin is cured.

Each of these steps involves multiple, proprietary procedures that have been developed over many years, to produce a quality product.

12. Bents entered into a 3M Employee Agreement on November 10, 1969, a copy of which is annexed to this Complaint as Exhibit A. In the agreement, Bents promised that he would "never, either during [his] employment by 3M or thereafter, use or disclose any Confidential Information as defined" in the agreement. "Confidential Information" is defined in ¶ 2 of the Agreement as:

> [I]nformation, not generally known, and proprietary to 3M, about 3M's processes and products, including information relating to research, development, manufacture, purchasing, accounting, engineering, marketing, merchandising, and selling. All information disclosed to me, or to which I obtain access during the period of my employment, which I have

reasonable basis to believe to be Confidential Information, or which is treated by 3M as being Confidential Information, shall be presumed to be Confidential Information.

13. The 3M Employee Agreement has been determined to be reasonable by the Courts of the State of Minnesota and the United States District Court for the District of Minnesota. *See, e.g.*, *Minn. Min. & Mfg. Co. v. Kirkevold*, 87 F.R.D. 324 (D. Minn. 1980).

**3M's Measures to Protect the Confidentiality of Its Information**

14. 3M has expended a considerable amount of time and effort and large sums of money to develop confidential and secret information about the methods and equipment used to manufacture non-woven abrasive products ("Confidential Information"). Through the course of Bents' career at 3M, he was given access to 3M's Confidential Information. Bents has, and at all times relevant to this action had, intimate knowledge of critical 3M Confidential Information, including, without limitation, the following:

    a. Fiber opening techniques;

    b. Methods to form a nylon or polyester web;

    c. Minimizing stretch during coating, drying, and curing processes;

    d. Techniques and equipment that allow 3M to manufacture non-woven abrasive products in a single trip operation;

    e. Methods used to create uniformity in the web and final product;

    f. Specifications for 3M-designed equipment;

    g. The identity of vendors from whom 3M purchases raw materials and equipment;

    h. Methods used to apply the resin/mineral mixture to the web, including specifications for pumps, valves and nozzles;

    i. Methods used to control thickness of the web;

    j. A low-waste method of making certain non-woven abrasive products; and

    k. Various unique test methods utilized by 3M.

15. 3M has developed extensive measures to protect the confidential nature of information about the processes and products which it has developed. Among other measures, it employs security guards to control access to premises and has established careful security programs to prevent

unauthorized persons from obtaining confidential information.  Employees are issued photo-identification access cards, which must be scanned to gain entry to 3M facilities and which must worn at all times within 3M facilities.  Visitors at 3M are required to wear identification badges and must be accompanied by an escort while on the premises.

16. In addition, 3M employees receive periodic training on recognizing 3M's confidential and trade secret information.  Employees' technical notebooks have rules on the inside cover prohibiting the photocopying of contents of the notebooks and the taking of them off the premises.  Much of 3M's information is created, stored and accessed by computer.  All 3M computer systems have safeguards for preventing unauthorized access to company information.  Users of networked systems must have a unique identifier or account number, as well as a verified password.  Before access to networked systems is granted, users must be identified and their need for access verified.  Access is provided only on a need-to-know basis.

17. Vendors with whom 3M works sign agreements, which have confidentiality obligations. Vendors are only provided with 3M information on a limited, need-to-know basis.  Often, they are not told the purpose for which 3M will use materials or equipment purchased from them.  In fact, 3M will purchase materials or equipment from several vendors to be used for a particular purpose, and purchases materials in bulk through sourcing and uses the materials for various applications.  As a result, vendors do not even know the materials or combinations of materials or equipment used by 3M for these purposes.

### ACS Obtains 3M Confidential Information from Bents

18. On information and belief, between approximately December 2012 and January 2013, Bents worked as a consultant on ACS' non-woven abrasive products and/or their manufacture.  Bents' consultancy involved multiple communications by telephone and email, as well as a visit to ACS' Monterrey, Mexico manufacturing facility.

19. On information and belief, in December 2012, [REDACTED]

5
COMPLAINT

20. ▓▓▓

21. ▓▓▓

   a. ▓▓▓

   b. ▓▓▓

   c. ▓▓▓

22. ▓▓▓ as well as ACS's own treatment of its proprietary and confidential information, demonstrate ACS's knowledge, at the time that ACS engaged Bents as a consultant, that: (i) ▓▓▓

6
COMPLAINT

███████████████████████████ was the type of information typically protected as confidential and proprietary by manufacturers, including 3M; and (ii) Bents would likely have been subject to an agreement with 3M that would have contained obligations of confidentiality and non-disclosure with respect to such information.

23. Notwithstanding ACS' knowledge of the foregoing, during the course of Bents' consultancy, ACS repeatedly requested that Bents provide, and Bents subsequently disclosed, Confidential Information constituting the same type of information that ACS itself treated as proprietary and confidential.

24. On information and belief, ACS knew or was willfully blind to the fact that that Bents was subject to an agreement to keep 3M's Confidential Information confidential, and that the information that ACS was eliciting from Bents, and that Bents was disclosing, was in fact Confidential Information subject to Bents' confidentiality and non-disclosure obligations. At the very least, ACS had knowledge of the foregoing facts which, if followed by reasonable inquiry, would have led to a complete disclosure of these contractual relations and rights between Bents and 3M, and failed to take such reasonable inquiry (for example, by following up with Bents to inquire as to whether the information sought by ACS was subject to any such confidentiality obligations, as it clearly was with ACS).

25. On information and belief, ACS has applied 3M's Confidential Information, as disclosed to ACS by Bents, in making changes and/or improvements to the processes and materials used to manufacture ACS' non-woven abrasive products.

26. On information and belief, ACS' use of 3M's Confidential Information has resulted in lower costs and higher profits to ACS and/or and lost sales, revenues, profits, and market share to 3M.

27. The 3M Confidential Information disclosed by Bents to ACS remains a valuable commercial asset of 3M, and continues to give 3M a competitive advantage over its competitors such as ACS. 3M has kept this information confidential and secret, with restrictions on its use and disclosure by its employees. The information would give a competitor such as ACS an unfair economic advantage in the market, allowing it to make a higher quality product at a lower cost.

28. 3M's Confidential Information gives 3M the ability to manufacture high quality non-woven abrasive products at a cost that makes these products highly competitive. The competitive

1  advantage 3M has or had in the market is at risk if its Confidential Information is shared with its
2  competitors such as ACS.

### 3M's Discovery of Bents' Disclosure of Confidential Information

4  29.  In November 2012, Bents informed a 3M employee that Bents had been consulting with
5  two of 3M's competitors in the non-woven abrasive products market.

6  30.  After the 3M employee reported Bents' activities to his supervisor at 3M, 3M contacted
7  Bents to conduct an investigation into his activities. 3M asked Bents to explain his consultations with its
8  competitors. By letter, 3M also asked him to cease any consulting work with its competitors.

9  31.  ████████████████████████████
10 ████████████████████████████████
11 Nevertheless, ACS continued to try to convince Bents to disclose 3M Confidential Information to ACS.

12 32.  On January 25, 2013, Bents came to 3M for a meeting. He told 3M he had been
13 consulting with a 3M competitor in India. At the time, Bents did not identify any other 3M competitors
14 for which he was consulting.

15 33.  On March 15, 2013, 3M brought suit against Bents in the District Court in the State of
16 Minnesota, Second Judicial District (the "Bents Litigation"). Over the course of the Bents Litigation, 3M
17 became aware that Bents had also consulted for and disclosed 3M's Confidential Information to ACS.

18 34.  On or about August 5, 2014, 3M and Bents executed a confidential settlement agreement,
19 settling the Bents Litigation.

20 35.  On August 11, 2014, 3M and Bents filed a Stipulation for Entry of Consent Judgment in
21 the Bents Litigation.

22 36.  On August 12, 2014, the court in the Bents Litigation entered a Consent Judgment against
23 Bents and in favor of 3M, a copy of which is annexed to this Complaint as Exhibit C. In the Consent
24 Judgment, Bents stipulated, and the court expressly found, that:

25  a. "Bents provided consulting services pertaining to the development, manufacture
26      and/or sale of products or components made with non-woven webbing" to third
27      parties, including ACS;

28  b. "In the course of those consulting services, Bents disclosed 3M Confidential

8
COMPLAINT

        Information as defined in the Bents Employee Agreement, including 3M trade secrets, about manufacturing methods, processes, formulations and equipment for making non-woven webbing;"

    c.    "Those disclosures were in breach of Bents' obligations under the Bents Employee Agreement and in violation of Minn. Stat. § 325C.01 *et seq.*"

37. As a result of Bents' disclosure of 3M Confidential Information to ACS and ACS' inducement thereof, 3M has incurred attorney's fees and expenses investigating and prosecuting the Bents Litigation.

## COUNT ONE

### (TORTIOUS INTERFERENCE WITH CONTRACT)

38. 3M incorporates by reference the allegations contained in Paragraphs 1–37 of this Complaint as if fully set forth herein.

39. Bents' disclosure of 3M's Confidential Information to ACS constitutes a breach of his obligations under the 3M Employee Agreement.

40. ACS has and had actual and/or constructive knowledge of Bents' agreement with 3M and the confidentiality and non-disclosure obligations thereunder, and yet intentionally and unjustifiably procured a breach of said agreement by Bents.

41. As a direct and proximate consequence of ACS' actions described above, 3M has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law, and has suffered and will suffer actual damages in an amount to be determined at trial.

42. As a direct and proximate consequence of ACS' actions described above, ACS has unjustly obtained a financial benefit from its receipt and use of 3M's Confidential Information, and 3M is entitled to disgorgement and recovery of the improper gain received by ACS as a result of its conduct.

## COUNT TWO

### (MISAPPROPRIATION OF TRADE SECRETS)

43. 3M incorporates by reference the allegations contained in Paragraphs 1–42 of this Complaint as if fully set forth herein.

44. One or more items of 3M Confidential Information concerning the methods and

equipment used to manufacture non-woven abrasive products, including as described above, meets the statutory definition of a trade secret under the laws of the State of Minnesota, Minn. Stat. § 325C.01 et seq.

45. 3M's trade secrets were communicated to Bents in trust and confidence by 3M in connection with his employment with 3M.

46. As described above, ACS unlawfully induced Bents to breach his Employee Agreement and thereby acquired 3M's trade secrets by improper means. On information and belief, ACS knew or had reason to know that (1) it acquired 3M's trade secrets by such improper means, and (2) that they were derived from or through a person (Bents) who owed a duty to 3M to maintain the secrecy of 3M's trade secrets or limit their use.

47. On information and belief, ACS is actually using, and/or there is a threat that ACS will use, 3M's trade secrets in the manufacture of non-woven abrasive products.

48. ACS' acquisition, actual use, and/or threatened use of 3M's trade secrets constitutes misappropriation thereof under the Minnesota Uniform Trade Secrets Act, Minn. Stat. § 325C.01 et seq. As a result of ACS' wrongful actions, 3M will suffer irreparable injury for which there is no adequate remedy at law, and has suffered and will suffer actual damages in an amount to be determined at trial.

**COUNT THREE**

**(UNFAIR COMPETITION)**

49. 3M incorporates by reference the allegations contained in Paragraphs 1–48 of this Complaint as if fully set forth herein.

50. The foregoing conduct of ACS constitutes unfair competition under the common law of the State of Minnesota.

51. As a direct and proximate consequence of ACS' actions described above, 3M has suffered, continues to suffer, and will suffer irreparable injury for which there is no adequate remedy at law, and has suffered and will suffer actual damages in an amount to be determined at trial.

52. As a direct and proximate consequence of ACS' actions described above, ACS has unjustly obtained a financial benefit from its receipt and use of 3M's Confidential Information, and 3M is entitled to disgorgement and recovery of the improper gain received by ACS as a result of its conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff 3M respectfully requests that this Court enter a Judgment and Order in its favor and as against Defendant ACS as follows:

a. Preliminarily and permanently enjoining ACS and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, from directly or indirectly:

   i. Using or disclosing 3M's Confidential Information;

   ii. Deleting, destroying, shredding, altering, erasing, or otherwise modifying, or causing or permitting anyone else to delete, destroy, shred, alter, delete, erase, or otherwise modify, any evidence relating to this action;

   iii. Reconstituting or recreating any portion of 3M's Confidential Information that Bents developed, used, or had access to during his employment with 3M or thereafter;

b. Requiring ACS to disclose and return to 3M of all 3M's Confidential Information;

c. Impounding and/or destroying all articles or processes made or used by ACS using 3M's Confidential Information;

d. Awarding 3M compensatory damages, past and future, in an amount adequate to compensate 3M;

e. Awarding 3M an accounting of ACS' profits due to the use of 3M's Confidential Information;

f. Awarding 3M pre-judgment and post-judgment interest at the maximum rate allowed by law;

g. Awarding 3M attorney's fees and costs incurred by virtue of this action;

h. Awarding 3M such other and further relief as this Court may deem to be just and proper.

**DEMAND FOR JURY TRIAL**

3M hereby demands a trial by jury on all issues in this action that are so triable as a matter of right and law.

Dated:  April 7, 2015         **GREENE ESPEL PLLP**

By: s/Bethany D. Krueger
Bethany D. Krueger, Reg. No. 306368
Megan M. Walsh, Reg. No. 394837
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402-3362
Telephone: 612.373.0830
Facsimile:  612.373.0929
bkrueger@greeneespel.com
mwalsh@greeneespel.com

Kurt A. Kappes (CA #146384)
GREENBERG TAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95184
Telephone: 916.442.1111
Facsimile:  916.448.1709
*Pro hac vice to be submitted*

Justin A. MacLean (NY #4719704)
GREENBERG TAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: 212.801.9200
Facsimile: 212.801.6400
*Pro hac vice to be submitted*

ATTORNEYS FOR 3M COMPANY AND 3M
INNOVATIVE PROPERTIES COMPANY